**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 30, 2020

John M. Seaman, Esquire
E. Wade Houston, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Kevin M. Coen, Esquire
Sara Toscano, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

Re: *K&P Holding II, LLC, et al. v. ATH Holding Company, LLC*, C.A. No. 2019-0821-KSJM

Dear Counsel:

This letter addresses the plaintiffs' motion for fee-shifting and the defendant's motion for a protective order.

## I. BACKGROUND

This case arises from a Master Purchase Agreement dated October 24, 2017 (the "Purchase Agreement").[1] Under the Purchase Agreement, Defendant ATH Holding Company, LLC (the "Buyer"), which is an acquisition vehicle of Anthem, Inc. ("Anthem"), acquired three companies (the "Companies") from the plaintiffs (together, "Plaintiffs" or the "Sellers"). The Companies are Freedom Health, Inc. ("Freedom"), Optimum Healthcare, Inc. ("Optimum"), and Global TPA,

---

[1] C.A. No. 2019-0821-KSJM Docket ("Dkt.") 1, Verified Compl. for Specific Performance ("Compl.") Ex. 1.

LLC ("Global"). Freedom and Optimum provide health plans to consumers, and Global provides third party administrative services to health providers.[2]

The acquisition closed on February 15, 2018, and the Buyer deposited $153.45 million of the purchase price into escrow to be released in two phases. This litigation concerns the first escrow release, which was to be made on August 15, 2019, in the amount of $99 million "minus the aggregate amount of all pending indemnification claims . . . properly submitted" (the "Indemnity Escrow Release Amount").[3]

To make a claim for indemnification, the Purchase Agreement required the Buyer to provide written notice "setting forth the specific facts and circumstances, in reasonable detail" for "the bases of the claim of indemnification" and "the amount of the Loss or Losses," among other things.[4] The Buyer was required to provide notice within thirty days "[f]ollowing the discovery of any facts or conditions that could be reasonably expected to give rise to a Loss or Losses for which indemnification . . . can be obtained."[5]

---

[2] Dkt. 10, ATH Holding Company, LLC's Answer to Pls.' Verified Compl. for Specific Performance ("Answer") ¶ 15.

[3] Purchase Agreement § 2.5(b); *see also id.* § 11.15 (defining Indemnity Escrow Amount).

[4] *Id.* § 8.5. If "the actual amount is not capable of reasonable calculation," the Purchase Agreement allowed the Buyer to provide "a non-binding, reasonable estimate thereof." *Id.*

[5] *Id.*

The Buyer made a claim for indemnification on August 14, 2019 (one day before the first escrow release date) by faxing the Sellers a notice of a claim against the escrow (the "Buyer Notice").[6] The Buyer Notice provided an estimate of Loss greater than the $99 million in escrow thus reducing the Indemnity Escrow Release Amount to zero. The Buyer did not release any funds on August 15, 2019.

As "reasonable detail" of the specific facts and circumstances providing the bases for the claim of indemnification and the amount of Loss, the Buyer Notice identified Civil Investigation Demands (the "CIDs") from the United States Attorney's Office in connection with a Department of Justice ("DOJ") investigation into Anthem's alleged violations of the False Claims Act (the "DOJ Investigation").[7] The Buyer Notice stated that the "CIDs could reasonably be expected to give rise to an indemnified Loss because the CIDs' wording and time period (2010 to the present) encompass Sellers' pre-acquisition conduct."[8] The Buyer Notice stated that the Losses "could well exhaust" the entirety of the funds in escrow.[9]

The only support in the Buyer Notice for the assertion that an indemnifiable claim could "reasonably be expected" to result was the definition of "[t]he terms

---

[6] Compl. Ex. 2.

[7] *See* Buyer Notice at 1–2; Answer ¶ 22.

[8] Buyer Notice at 1.

[9] *Id.* at 2.

'You,' 'Your,' 'Anthem' and 'Anthem's'" in the CID as inclusive of Anthem's subsidiaries, such as the Companies.[10]

The only support in the Buyer Notice for the assertion that Losses "could well exhaust" the $99 million Indemnity Escrow Release Amount was an October 1, 2018 DOJ Press Release announcing one $270 million settlement with an unaffiliated company for violations of the False Claims Act.[11]

The Buyer Notice does not state this, but the DOJ Investigation began in December 2016—that is, long before the Buyer signed (October 2017) or closed (February 2018) on the Purchase Agreement. By the time Anthem had expressed an interest in buying the Companies, Anthem had already made several document productions to the DOJ.[12] Anthem continued producing documents after it executed the Purchase Agreement and after it closed on the acquisition of the Companies.[13] Anthem received the CIDs between March 2018 and August 2018.[14] Anthem did not provide a copy of the CIDs to Sellers with its Buyer Notice.[15]

---

[10] *Id.* at 1.

[11] *Id.* at 2, 4–5.

[12] *See* Answer ¶ 34.

[13] *See id.* ¶ 43.

[14] Answer ¶¶ 44–52.

[15] *See* Buyer Notice; *see also* Dkt. 12, Transmittal Aff. of E. Wade Houston, Esq. in Supp. of Pls.' Opening Br. in Supp. of Their Mot. for Summ. J. Ex. 18 at 1 (emailing copies of

The Buyer Notice does not state this, but the DOJ commenced discovery proceedings against Anthem to enforce compliance with the CIDs in August 2017. Anthem stipulated to an order resolving the discovery proceeding in February 2019.[16] In the stipulation, Anthem represented that it operated twenty-seven relevant plans through "centralized corporate" functions and approximately eight plans through four of its subsidiaries. The DOJ agreed to limit discovery to Anthem's "centralized corporate" functions and to confer with Anthem regarding the scope of discovery from the subsidiary-operated plans "after their acquisition by Anthem."[17]

The Sellers filed their complaint in this litigation in October 2019.[18] The complaint challenged the sufficiency and bases of the Buyer Notice and sought specific performance of Anthem's obligation to release the full $99 million from escrow.[19] The Buyer answered the complaint in December 2019,[20] and the Sellers moved for summary judgment the next day.[21]

---

the CIDs on September 18, 2019); Answer ¶¶ 45, 49, 51 (acknowledging that Anthem had not shared the CIDs with the Sellers when it sent its Buyer Notice).

[16] Compl. Ex. 7.

[17] *Id.* ¶¶ 3, 5.

[18] Compl.

[19] *Id.* ¶¶ 7, 93–94, Requests for Relief ¶ a.

[20] Answer.

[21] Dkt. 12, Pls.' Mot. for Summ. J.

In January 2020, just before the Buyer filed its brief in opposition to Plaintiffs' motion for summary judgment, the Sellers and the Buyer discussed a potential settlement. Their respective attorneys exchanged communications to this effect before completing briefing on the Plaintiffs' motion for summary judgment.[22] During these discussions, the Buyer's counsel stated that the Companies "have a common interest in responding to the DOJ's claims as they relate to [the Companies]," suggesting that Anthem anticipated that the DOJ would pursue claims concerning the Companies.[23] Counsel to the Sellers left that exchange believing that Anthem expected the DOJ to file a complaint against the Companies imminently.[24] Counsel to the Sellers followed up by requesting "the basis for your statements about the DOJ's intentions."[25] No basis was provided, and the parties did not agree on a settlement.[26]

The Buyer filed its brief in opposition to Plaintiffs' motion for summary judgment on January 27, 2020.[27] The Buyer represented in that brief that: "The

---

[22] Dkt. 34, Supplemental Transmittal Aff. of E. Wade Houston in Support of Pls.' Reply Br. in Supp. of Their Mot. for Summ. J. ("Supp. Houston Aff.") Ex. 24.

[23] *See id.* at 1.

[24] Supp. Houston Aff. Ex. 25 at 1.

[25] Supp. Houston Aff. Ex. 24 at 1.

[26] Supp. Houston Aff. Ex. 25 at 1.

[27] Dkt. 28, ATH Holding Company, LLC's Br. in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Summ. J. Ans. Br.").

DOJ is investigating . . . whether the Companies' [Medicare filings] . . . violated the Federal False Claims Act;"[28] the "[DOJ Investigation] now includes the Companies;"[29] and "the Companies were one of the subsidiaries that [Anthem] recently produced information about in response to the DOJ's demands."[30]

The Sellers submitted their reply brief in support of their motion for summary judgment on March 2, 2020. Just days before the scheduled March 30, 2020 hearing on the motion for summary judgment, the DOJ filed a suit against Anthem in the United States District Court for the Southern District of New York. The suit did not name the Companies.[31] In response, Anthem agreed to release the escrow funds to the Sellers.[32] I subsequently entered an order dismissing the complaint as moot but retained jurisdiction in anticipation of "any application for fees, expenses, and costs."[33]

---

[28] *Id.* at 2.

[29] *Id.*

[30] *Id.* at 3.

[31] Dkt. 38, Letter to Vice Chancellor McCormick from Kevin M. Coen regarding Pls.' Mot. for Summ. J. at 1.

[32] *Id.* at 2.

[33] Dkt. 44, Order Dismissing Compl. as Moot and Retaining Jurisdiction for Fee App. ("Mootness Order") ¶¶ 1–2.

A burst of motion practice followed. In response to Plaintiffs' discovery requests served in support of their then-anticipated motion for fee-shifting,[34] Anthem moved for a protective order. That motion was fully briefed on June 25, 2020.[35] While the parties were briefing Anthem's motion for a protective order, Plaintiffs filed their motion for fee-shifting. The parties completed briefing that motion on July 31, 2020,[36] and I heard oral argument on September 1, 2020.[37]

## II. LEGAL ANALYSIS

Plaintiffs argue that the Buyer acted in bad faith by withholding the full $99 million Indemnity Escrow Release Amount based solely on the definition of the term "Anthem" in the CIDs and the press release of the DOJ's settlement with an unaffiliated entity. Plaintiffs further argue that the Buyer would have produced evidence of any additional bases for its claim by now given the allegations made against it, and that inferences should be drawn in favor of Plaintiffs due to the Buyer's refusal to respond to discovery.

Based on the current record, I am troubled by the Buyer's conduct. The events in the DOJ enforcement action, including the stipulation resolving the discovery

---

[34] Dkt. 48, Transmittal Decl. of Sara Toscano in Supp. of ATH Holding Company, LLC's Mot. for a Protective Order ("Toscano Decl.") Ex. 18

[35] Dkt. 48; Dkt. 51; Dkt. 58.

[36] Dkt. 53; Dkt. 62; Dkt. 64.

[37] Dkt. 68.

dispute, suggest that the Companies were not the targets of the DOJ Investigation and that the Buyer was aware of this fact, but that the Buyer nevertheless perpetuated the inaccurate narrative in this litigation.

The Buyer had an opportunity to defend its actions. With its brief in opposition to Plaintiffs' motion for summary judgment, the Buyer submitted a declaration by Alwin F. van Heerden, the Director of Corporate Development at Anthem.[38] Mr. van Heerden attempted to explain-away the seemingly narrow scope of the discovery dispute with the DOJ by stating that the dispute concerned the scope of the initial discovery demands and not the scope of the full investigation.[39] But this statement falls short of demonstrating that the Buyer had a good faith basis for withholding the Indemnity Escrow Release Amount. Mr. van Heerden does not explain what reasons, if any, the Buyer had for believing that the full investigation would cover the Companies or that the CIDs could give rise to a loss covered by the Purchase Agreement's indemnity provisions.

Yet, fee-shifting is a rare occurrence. Delaware courts follow the American Rule that "each party is generally expected to pay its own attorneys' fees regardless

---

[38] Dkt. 30, Decl. Of Alwyn van Heerden in Supp. of ATH Holding Company, LLC's Br. in Opp'n to Pls.' Mot. For Summ. J.

[39] *Id.* ¶¶ 43–45.

of the outcome of the litigation."[40] While this court retains the ability to shift fees under the bad faith exception to the American Rule, fee-shifting "is not lightly invoked,"[41] and will only be "applied in 'extraordinary circumstances' as a tool to deter abusive litigation and to protect the integrity of the judicial process."[42]

Although it is true that the Buyer had the opportunity to defend its conduct, I am reticent to shift fees without further discovery. In moving for a protective order, the Buyer took the position that this litigation was fully resolved and that Plaintiffs' discovery requests were an overly expansive fishing expedition. Knowing now that I do not view the matter as fully resolved,[43] and that I view the Buyer's conduct as troubling, it stands to reason that the Buyer's position and incentives may have changed and that the Buyer may be more willing to respond to discovery.

In any event, there is no reason to categorically deny the Sellers' discovery into the Buyer's conduct. This court has the discretion to grant protective orders "for good cause shown . . . to protect a party or person from annoyance,

---

[40] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017) (citing *Montgomery Cellular Hldg. Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005)).

[41] *Ravenswood Inv. Co. v. Winmill & Co.*, 2014 WL 2445776, at *4 (Del. Ch. May 30, 2014) (quoting *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005)).

[42] *E.g.*, *Shawe*, 157 A.3d at 149–50; *Montgomery Cellular*, 880 A.2d at 227; *accord. Dover Hist. Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1093 (Del. 2006); *Henry v. Phixios Hldgs., Inc.*, 2017 WL 2928034, at *14 (Del. Ch. July 10, 2017) (Montgomery-Reeves, V.C.).

[43] *See* Mootness Order ¶ 2.

embarrassment, oppression, or undue burden or expense."[44]  Plaintiffs have issued six discrete discovery requests.[45]  The requests seek relevant information, impose a minimal burden on the Buyer, and are otherwise appropriate.  With one clarification, there is no basis to conclude that a protective order is necessary to protect the Buyer from any hardships resulting from the requests.

The clarification concerns privileged information.  Anthem maintains that it is likely that certain documents requested by Plaintiffs contain privileged information.  Plaintiffs deny that Anthem has the right to assert privilege over the documents underlying its assertions that (i) the DOJ was investigating the Companies, and (ii) as of January 2020, the DOJ was imminently going to sue the Companies.[46]  It seems premature at this stage to address whether Anthem has the right to assert privilege over responsive documents, and this ruling does not reach the issue.

---

[44] Ct. Ch. R. 26(c).

[45] Toscano Decl. Ex. 18 at 5–6.

[46] Dkt. 51, Ex. A to Pls.' Response to Anthem's Mot. for Protective Order.

## III.   CONCLUSION

Defendant's motion for a protective order is denied as set forth above.  I will defer ruling on Plaintiffs' motion for fee-shifting to permit the discovery contemplated by this ruling.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Vice Chancellor

cc:   All counsel of record (by *File & ServeXpress*)